UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY HUDSON,

        Petitioner,

v.                                        Civil Action Number: 2:09-cv-13703
                                        Honorable Victoria A. Roberts

DEBRA SCUTT,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING AN
APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

## I. INTRODUCTION

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254.  Michigan prisoner

Cory Hudson is incarcerated by the Michigan Department of Corrections at the G. Robert Cotton

Correctional Facility in Jackson, Michigan.  He is serving a life sentence, with the possibility of

parole after fifteen years.  In 2004, he was convicted of possession of 650 or more grams of

cocaine in Oakland County, Michigan.  He was tried jointly with co-defendants, Pablo Bonilla

and Ricardo Arias, before a single jury.

Petitioner alleges that he is incarcerated in violation of his constitutional rights because

(1) the prosecution's evidence that he aided and abetted the possession of the cocaine was

insufficient to support his conviction, (2) the prosecutor committed misconduct by mis-

characterizing the evidence and shifting the burden of proof, and (3) appellate counsel was

ineffective for failing to raise the issue that the prosecutor elicited inadmissible hearsay

testimony from a confidential informant through the testimony of a police officer, in violation of

his rights under the Confrontation Clause.

Respondent says Petitioner's claims either lack merit or were procedurally defaulted.

On May 26, 2010, Petitioner filed a Motion to Appoint Counsel, which the Court denied on June 9, 2010.  See Order Den. Mot. to Appoint Counsel, June 9, 2010 [dkt. # 10].  Petitioner filed a second Motion to Appoint Counsel, asking for assistance in the preparation of his case because he was unable to properly do so because of his blindness.  On August 2, 2010, the Court granted Petitioner's request.  See Order Granting Second Mot. to Appoint Counsel [dkt. # 13].

On August 4, 2010, the Court issued an Order Appointing Federal Defender [dkt. # 14], and, on August 27, 2010, James R. Gerometta filed an Appearance on behalf of Petitioner.  See Att'y Appearance [dkt. # 16].  Recently, on April 25, 2012, Mr. Gerometta filed a Supplemental Memorandum in Support of Petition, addressing only Petitioner's third claim: that appellate counsel was ineffective for failing to raise a claim under the Confrontation Clause.  See Supplemental Br., 2 Apr. 25, 2012 [dkt. # 18].

The Court denies the Petition.  The Court also declines to issue Petitioner a Certificate of Appealability but will grant him an Application for Leave to Proceed On Appeal *In Forma Pauperis*.

## II.  BACKGROUND

Petitioner was originally charged with one count of possession with intent to deliver 650 or more grams of cocaine.  The jury convicted him and his co-defendants, Bonilla and Arias, of the lesser offense of possession of 650 or more grams of cocaine.  Testimony revealed the following pertinent facts.

In late 2001, through early 2002,  Pontiac Police Department Officer Jeremy Pittman was assigned to the Narcotics Enforcement Section of the Department.  He became involved in an

investigation that began with a "smaller level cocaine dealer" and worked its way up to "larger

scale dealers."  Trial Tr. vol. I, 217 Feb. 24, 2004.  According to Officer Pittman, the goal of the

investigation was to discover who was supplying cocaine to "mid-level dealers in the City of

Pontiac."  *Id.* at 218.

Officer Pittman testified that over the course of his investigation, he had the first names,

and physical descriptions, of a number of suspects, "Cory," "Pablo," and "Ricky."  Trial Tr. vol.

I, 218 Feb. 24, 2004.  Officer Pittman also said he had general descriptions of the suspects.  The

description for Pablo was a Puerto Rican or Hispanic male with long hair; for Ricky, a short,

thin, black male who drove a dark-gray pick-up truck with a cap on the back; and for Petitioner,

a thin, black male with light skin and braids.  It was believed that these individuals were

operating out of a home in Detroit in the area known as "Mexicantown."

The police set up surveillance.  The surveillance was conducted for several days.

Evidence was presented that the police saw the three individuals arrive at the Detroit residence in

three separate vehicles on February 7, 2002.  The officers then saw Petitioner, Bonilla, and

Arias, come out of the house and briefly carry on a conversation in the street.  Afterward, Bonilla

got into the passenger side of the pick-up truck that Arias drove.  Petitioner removed a dark

jacket from the car that he drove, a light-colored Ford Taurus, walked over to a dark-colored

Ford Taurus, and got into that car driven by a female.  The dark-colored Taurus and Arias' pick-

up truck left together, with the pick-up truck in the lead.  The vehicles travelled from Detroit to

Pontiac in tandem for approximately one hour.  There was testimony that the dark-colored

Taurus closely followed the pick-up truck, including switching lanes only when the pick-up

truck did so.

There was testimony that, when the police stopped the dark-colored Taurus, the pick-up truck immediately "cross[ed] over three lanes," made a U-turn, slowly drove past where the Taurus was stopped, and then sped away, disregarding traffic laws. Trial Tr. vol. I, 230 Feb. 24, 2004. The Taurus contained the female driver and two male passengers. The person in the rear was later identified as Petitioner. There were two black coats on the rear seat, one was on the seat where Petitioner had been sitting. Beneath one of the black coats was a yellow plastic Murray's Discount Auto bag containing a "brick" of more than 916 grams of cocaine.

Latent fingerprints for co-defendants Bonilla and Arias were on the bag. Other latent fingerprints found on the package did not match Petitioner's.

Petitioner did not testify. A Motion for a Directed Verdict was denied. Trial Tr. vol. III, 124-25 Feb. 27, 2004. On April, 5, 2004, Petitioner was convicted and sentenced.

Petitioner filed a Direct Appeal with the Michigan Court of Appeals, raising what form the first two claims in his Habeas Petition. On January 17, 2006, the Court of Appeals affirmed his conviction and sentence. *People v. Hudson*, No. 255237, 2006 WL 120365 (Mich. Ct. App. Jan. 17, 2006). Petitioner filed an Application for Leave to Appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. On June 26, 2006, the Supreme Court denied the Application. *People v. Hudson*, 475 Mich. 886; 715 N.W.2d 875 (2006).

In July 2007, Petitioner filed a Motion for Relief from Judgment, pursuant to Michigan Court Rule 6.508(D), with the state trial court, raising what forms the third claim in his Habeas Petition. The trial court denied the Motion on August 31, 2007. *People v. Hudson*, No. 02-183420-FC (Oakland Cnty. Cir. Ct. Aug. 31, 2007). Petitioner's subsequent Delayed

4

Application for Leave to Appeal to the Court of Appeals was denied because "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Hudson*, No. 285111 (Mich. Ct. App. Dec. 9, 2008).  His Application for Leave to Appeal that decision, filed with the Michigan Supreme Court, was denied for the same reason on August 6, 2009.  *People v. Hudson*, 484 Mich. 868; 769 N.W.2d 669 (2009).

Petitioner filed this Habeas Petition on September 18, 2009, signed but not dated.

### III.  DISCUSSION

### A.  Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA), which provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

5

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) ( per curiam )). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011) (holding that "[t]his is a difficult to meet and 'highly deferential standard for evaluating state-court rulings") (citing *Harrington*, --- U.S. at ---, 131 S.Ct at 786 and *Woodford*, 537 U.S. at 24) (internal quotation marks omitted).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

through appeal." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786 (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  Thus, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

With those standards in mind, the Court addresses the merits of Petitioner's claims.

### B. Claim I–Insufficient Evidence

Petitioner alleges that insufficient evidence was presented to support a conviction that he aided and abetted the possession of cocaine.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).  "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of

7

sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, possession of a controlled substance requires a showing of "dominion or right of control over the drug with knowledge of its presence and character." *People v. McKinney*, 258 Mich.App. 157, 165; 670 N.W.2d 254, 260 (2003) (internal quotation and citations omitted).  "[P]ossession may be either actual or constructive, and may be joint as well as exclusive." *Id.* at 166; 670 N.W.2d 254 (citation omitted).  "Likewise, possession may be found even when the defendant is not the owner of recovered narcotics." *People v. Wolfe*, 440 Mich. 508, 520; 489 N.W.2d 748, 753 (1992), *modified*, 441 Mich. 1201 (1992) (citations omitted).  "Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance." *Id*. (citations omitted).  Mere presence where the controlled substance was found is insufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established.  *Id.* (citations omitted).  Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance.  *Id.* at 521; 489 N.W.2d at 754.

> Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required.  Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of possession.  Circumstantial evidence that a defendant had the exclusive control or dominion over property on which contraband narcotics are found is sufficient to establish that the defendant constructively possessed the drug.

*People v. McGhee*, 268 Mich.App. 600, 623; 709 N.W.2d 595, 612 (2005) (internal citations omitted).

To convict a defendant under an aiding and abetting theory, the prosecution must

8

establish that the crime was committed by the defendant or some other person, that the defendant

performed acts or gave encouragement which aided or assisted in the commission of the crime,

and that the defendant either intended to commit the crime or knew that the principal intended to

commit the crime at the time he gave the aid or encouragement. *People v. Robinson*, 475 Mich.

1, 8-9; 715 N.W.2d 44, 49 (2006) (quoting *People v. Moore*, 470 Mich. 56, 67-68; 679 N.W.2d

41, 49 (2004)); *see also Bonilla v. Lafler*, No. 06-15466, 2009 WL 2386080, at *18 (E.D. Mich.

July 30, 2009) (Edmunds, J.) (same). The state of mind of an aider and abettor may be inferred

from all the facts and circumstances. *Moore*, 470 Mich. at 67-68; 679 N.W.2d at 49.

The Michigan Court of Appeals held that sufficient evidence was presented to show

possession of the cocaine, reasoning in relevant part:

> Viewed in a light most favorable to the prosecution, the evidence was
> sufficient for a rational trier of fact to conclude beyond a reasonable doubt that
> defendant knowingly possessed the cocaine. Evidence was presented that, during
> surveillance, the police observed the three defendants arrive at a residence in
> three separate vehicles. Shortly thereafter, officers observed defendant, and
> codefendants Arias and Bonilla come out of the house, and briefly converse in the
> street. Thereafter, codefendant Bonilla got into the passenger side of a pickup
> truck that codefendant Arias was driving. Defendant removed a dark jacket from
> the car that he was previously driving, a light-colored Taurus, and walked over to
> a dark-colored Taurus. The dark-colored Taurus and a pickup truck then left
> simultaneously, with the pickup truck in the lead, and continued to travel from
> Detroit to Pontiac in tandem for approximately an hour. When the police stopped
> the Taurus, defendant was the sole rear-seat passenger. As the police secured the
> Taurus, officers observed defendant making suspicious movements, including
> reaching under his seat and behind his back. When the police removed defendant
> from the vehicle, an officer saw that defendant was sitting on a black jacket that
> was covering a "brick" of more than 916 grams of cocaine. From this evidence, a
> jury could reasonably infer that defendant knew that the cocaine was present and,
> through his actions, attempted to conceal it.
>
> Although the cocaine could also have belonged to others, possession may
> be joint. Here, defendant was charged as a principal and as an aider and abettor.
> A person who aids or abets the commission of a crime may be convicted and
> punished as if he directly committed the offense. "'Aiding and abetting'

9

describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime." "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." Further, even though defendant asserts that the evidence linking him to the cocaine was weak, the jury was entitled to accept or reject any of the evidence presented. Moreover, a prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. The evidence was sufficient to sustain defendant's conviction of possession of 650 or more grams of cocaine.

*Hudson*, 2006 WL 120365, at *1-2 (internal and end citations omitted).

Petitioner alleges that there was no evidence to show that he possessed or controlled the cocaine at any time. He points to the absence of physical evidence, the fact that his fingerprints were not found on the cocaine, and the fact that he had no cocaine on him when he was arrested.

A court does not look to facts that are absent in determining evidentiary sufficiency but rather to the facts that were presented. Many imaginable "facts" are absent in every case, including this one. There was, for example, no signed and videotaped confession. There was no cocaine found in Petitioner's hands.

Despite the absence of Petitioner's fingerprints on the brick of cocaine, and even though no cocaine was found physically in Petitioner's grasp, the Court of Appeals, although not specifically citing *Jackson*, clearly cited case law incorporating the *Jackson* standard and found that there was sufficient evidence presented to allow a reasonable trier of fact to conclude that Petitioner acted as an aider and abettor in this case.

Looking at the totality of the circumstances, the Court concludes that the evidence presented at trial clearly supported a finding that the prosecutor established beyond a reasonable doubt that Petitioner acted as an aider and abettor with respect to the possession of the cocaine. The Court finds that the Court of Appeals's holding was not contrary to or an unreasonable

10

application of the *Jackson* standard.  Petitioner is not entitled to habeas relief on his insufficient evidence claim.

### C.  Claim II–Prosecutorial Misconduct

Petitioner contends that the prosecutor engaged in misconduct that rendered his trial unfair.  He argues that the prosecutor committed misconduct by mis-characterizing the evidence during closing argument and improperly shifted the burden of proof.

The Michigan Court of Appeals rejected Petitioner's first prosecutorial misconduct claim on the merits and reviewed the remaining claim for plain error because counsel failed to contemporaneously object to the conduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on a habeas claim based upon prosecutorial misconduct, Petitioner must show that the statements in question "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  This is a high burden and, when reviewing the statements in question, the Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The mere presence of prosecutorial misconduct is not enough, "[r]eversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).

In determining whether prosecutorial misconduct meets the *Donnelly* standard of having

11

"so infected the trial with unfairness as to make the resulting conviction a denial of due process," the Court uses a two-step analysis. *Macias v. Makowski*, 291 F.3d 447, 451-52 (6th Cir. 2002) (quoting *Donnelly*, 416 U.S. at 643). The first step is to determine whether the "prosecutor's conduct and remarks were improper." *Macias*, 291 F.3d at 452 (citation omitted). If the Court concludes that they were improper, it must then apply a four factor test to determine "whether the impropriety was flagrant," and thus a violation of due process. *Macias*, 291 F.3d at 452 (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)). Flagrancy depends on four factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Millender*, 376 F.3d at 528 (citing *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (quoting *United States v. Carroll*, 26 F.3d 1380, 1385 (6 Cir. 1994)).

Petitioner first claims that the prosecutor argued facts not in evidence during closing argument; he claims there was no evidence that the item of clothing that he removed from the light-colored Ford Taurus was the jacket that was later recovered from the dark-colored Ford Taurus:

> [ The prosecutor ]: I had to have some witnesses come and testify to you what they observed during the surveillance . . . .
>
> * * *
>
> They meet at Bonilla's house. They come in separate cars. They all get out. They go in the house. They come out of the house. They talk. *And then I saw Defendant Hudson go back to the light-colored Taurus, remove People's Exhibit 2, a dark jacket, and then go into-*
> [ Defense counsel ]: Your Honor, that misrepresents the testimony. There was no

12

testimony that that was the jacket that he carried, if in fact he carried a jacket at all.
[ The trial court ]:  It's argument.  Go ahead.

*Hudson*, 2006 WL 120365, at *2-3 (emphasis in the original).

Prosecutors may not misstate the evidence, *Carter*, 236 F.3d at 784, or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), but they have "'leeway to argue reasonable inferences from the evidence' during closing arguments."  *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).  Here, the prosecutor's statement regarding the jacket was a reasonable inference from the evidence as it related to his theory of the case.

In addressing this claim, the Court of Appeals stated:

Although a prosecutor may not make a statement of fact to the jury that is unsupported by the evidence, [], he is free to argue reasonable inferences arising from the evidence as they relate to his theory of the case, and is not required to phrase arguments and inferences in the blandest possible terms.  During trial, an officer testified that, during surveillance, he observed defendant remove a dark jacket or sweater from a light-colored Taurus, and walk with the item to the dark-colored Taurus.  When the police subsequently stopped the dark-colored Taurus, officers observed defendant, who was the sole rear-seat passenger, sitting on a dark-colored jacket that was concealing the cocaine.  Given this testimony, the prosecutor's statement was a reasonable inference from the evidence as it related to his theory of the case.

Further, when defense counsel objected, the trial court instructed the jury that the prosecutor's comments constituted "argument."  In its final instructions, the court instructed the jurors that the lawyers' comments and arguments are not evidence, and that the case should be decided on the basis of the evidence.  These instructions were sufficient to cure any possible prejudice.  Juries are presumed to follow their instructions.  Consequently, this claim does not warrant reversal.

*Hudson*, 2006 WL 120365, at *3 (citations omitted).

The Court agrees with the Court of Appeals's analysis of the issue and finds that the prosecutor's remarks were not improper; it was reasonable to make such an inference during

13

closing argument.  The Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent in this regard.

With respect to Petitioner's remaining prosecutorial misconduct claim, Respondent argues that the claim is procedurally defaulted because Petitioner failed to object at trial.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (same).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last-explained, state-court judgment should be used to make that determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

In the present case, all of the prerequisites to a finding of procedural default are present. The Court of Appeals expressly found that Petitioner's challenge to the prosecutor's misconduct, with respect to shifting the burden of proof, had not been preserved for review, because of counsel's failure to make a contemporaneous objection at trial.  *Hudson*, 2006 WL 120365, at *2. The fact that the court went on to review the issue under a plain error standard does not constitute a waiver of state procedural default rules.  *See Goodwin v. Johnson*, 632 F.3d 301, 315

14

(6th Cir. 2011); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."); *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989) (a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

The failure to make a contemporaneous objection is a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130, 138 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991) (same). The Michigan Court of Appeals denied relief on this claim based upon a procedural default, defense counsel's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442, 450 (6th Cir. 2007). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Harrington*, --- U.S. at ---, 131 S.Ct. at 787 (same). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably

available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner fails to allege cause for the procedural default of this claim, and habeas review is barred.

Additionally, Petitioner has also not shown that a fundamental miscarriage of justice has occurred if the Court does not review the claim. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."

*Schlup*, 513 U.S. at 324. Petitioner has made no such showing. The claim is barred by procedural default and does not warrant habeas relief.

### D. Claim III–Ineffective Assistance of Appellate Counsel

In his final habeas claim, Petitioner alleges that appellate counsel was ineffective for failing to raise a claim in his direct appeal that his rights under the Confrontation Clause were violated when certain hearsay testimony was admitted during trial. Petitioner raised the claim for the first time in his Motion for Relief from Judgment in the state trial court. This claim, however, is not subject to procedural default because state collateral review under Michigan Court Rule 6.500 *et.seq.*, is the first opportunity for a criminal defendant to address the issue concerning the effectiveness of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th

Cir. 2005).  Thus, the Court addresses the merits of this claim.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To prevail on a claim of ineffective assistance of appellate counsel, Petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance.  *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 688, 694).  It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal.  *Smith v. Murray*, 477 U.S. 527, 536 (1986).  On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones."  *Id.* at 752 (quoting R. Stern, Appellate Practice in the United States 266 (1981)).  "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention."  *Id.*

To evaluate a claim of ineffective assistance of appellate counsel, the Court assesses the strength of the claim appellate counsel failed to raise.  *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).  "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the

appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). If there is a reasonable probability that Petitioner would have prevailed on appeal had the claim been raised, then this Court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance.

Petitioner argues that he was denied a fair trial by the introduction of Officer Pittman's testimony that the police were investigating drug trafficking, developed the names "Cory," "Pablo," and "Ricky," along with descriptions and an address in Detroit, and subsequently set up surveillance of the area. That information testified to by Officer Pittman was given to him by a confidential informant. It is Petitioner's position that the testimony was based on impermissible hearsay and violated his right under the Confrontation Clause, and that his appellate attorney was ineffective for failing to raise the issue on appeal.

The Confrontation Clause of the Sixth Amendment states, "[i]n all criminal prosecutions, the accused shall enjoy the right [] to be confronted with the witnesses against him." U.S. Const. amend. VI.

In *Crawford v. Washington*, 541 U.S. 36, 51 (2004), the Supreme Court asserted that "not all hearsay implicates the Sixth Amendment's core concerns." Rather, the Supreme Court introduced a distinction between testimonial and non-testimonial statements for Confrontation Clause purposes, explaining that the protection applies only to prohibit "testimonial" statements when the declarant is not available to be cross-examined by the defendant. *Id.* "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). Testimonial statements include statements made in

18

the course of police interrogation where the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.

A tip by a confidential informant to a police officer is considered testimonial in nature. "The threshold determination that we must make is whether the statements of a confidential informant to police are 'testimonial' in nature." *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004). This Court must then consider the purpose of the testimonial statements, as the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9.

"The proper inquiry [] is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Cromer*, 389 F.3d at 675. Under that inquiry, the Sixth Circuit held that "statements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant." *Id.* at 670-71.

However, "[t]estimony that does not reveal any specific statement made by a confidential informant . . . and merely provides background information regarding the course of the investigation does not violated the Confrontation Clause." *United States v. Pugh*, No. 06-3521, 2008 WL 961564, * 5 (6th Cir. Apr. 9, 2008) (citing *Cromer*, 389 F.3d at 675; *see also United States v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007) ("[T]estimony provided merely by way of background, or to explain simply why the Government began an investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment

19

rights.") (internal quotation omitted).

Petitioner argues that Officer Pittman's testimony contained testimonial hearsay that was used to identify him as one of the drug-trafficking suspects, and that he had no opportunity to cross-examine the informant.

In rejecting this claim in Petitioner's Motion for Relief from Judgement, the state trial judge found that any Confrontation-Clause error "was harmless in light of the overwhelming evidence of Defendant's [guilt]." *Hudson*, No. 02-183420-FC, at 3.  Moreover, the trial judge stated that, "because there is a reasonable probability that, had the issue been raised in Defendant's appeal, the Court of Appeals would have ruled as it did in his co-defendants' appeals." *Id.* at 3-4; *See People v. Arias*, No. 255428, 2006 WL 119143, at*1-3 (Mich. Ct. App. Jan. 17, 2006); *People v. Bonilla*, No. 255426, 2006 WL 120366, at *5-7 (Mich. Ct. App. Jan. 17, 2006).  In those cases, the Court of Appeals stated:

> After carefully reviewing the exchange at issue, the record reveals that the prosecutor only narrowly questioned Officer Pittman in order to set the stage for Pittman's later interactions with defendants.  Pittman revealed that he considered defendants "suspects" in drug activity and accordingly instituted further police action resulting in the accumulation of evidence that ultimately resulted in defendant's arrest and later conviction.  Pittman's testimony did not involve the considerations that led him to believe defendants were involved in a criminal enterprise.  Contrary to defendant's assertion, one cannot infer from the challenged testimony alone that defendants had committed any crime, but only that defendants were persons of interest in an ongoing investigation.  Thus, we cannot conclude that defendant's rights were violated because we agree with the trial court's conclusion that the challenged testimony served only as a backdrop for later police interactions with defendants, was not offered to prove the truth of the matter asserted, and for these reasons cannot be characterized as hearsay.

*Arias*, 2006 WL 119143, at *3; *Bonilla*, 2006 120366, at *6.

The confidential informant's statements that the three persons matching the descriptions of Petitioner and his co-defendants were not testimonial; they provided background information

20

and an explanation as to why the investigation proceeded as it did.  The testimony was clearly limited in scope to show how the police selected Petitioner and his co-defendants as a suspects. The admission of the evidence did not violate the Confrontation Clause.  Furthermore, the government introduced enough evidence at trial to establish Petitioner's guilt.

The trial court's ruling is not contrary to, or an unreasonable application, clearly established Supreme Court precedent.  Moreover, the Court also agrees that, even if there was a constitutional error, the error was harmless beyond a reasonable doubt, as stated by the trial court in denying Petitioner's Motion for Relief from Judgment.

Violations of the Confrontation Clause are subject to harmless error analysis.  *See*, e.g., *Chapman v. California*, 386 U.S. 18, 22-23 (1967).  Errors are "'harmless' in terms of their effect on the [fact-finding] process at trial" where "the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).  In such cases, an otherwise valid conviction should not be set aside.  *Id.*

Petitioner's conviction did not depend upon the testimonial statements of the confidential informant.  Unlike the tenuous facts in *Cromer*, the government provided evidence, independent of the confidential informant's testimony, to establish that Petitioner was involved in the crime. Moreover, the trial court instructed the jury that, while there was "some testimony that the police were targeting certain individuals[,] [] the mere fact [Petitioner] may have been [a] suspect is not evidence of [his] guilt."  Trial Tr. vol. III, 99-100 Feb. 27, 2004.  As discussed, sufficient evidence was presented in this case for a rational trier of fact to conclude beyond a reasonable doubt that Petitioner was guilty of possession of cocaine.

If appellate counsel had included the issue on appeal, the inclusion of the issue probably would not have changed the result of the appeal. Petitioner failed to show that his appellate counsel was ineffective under the *Strickland* standard. Appellate counsel's performance was not unreasonable nor was his performance such that it prejudiced him so as to be outcome determinative. He is not entitled to habeas relief.

### E. Certificate of Appealability

The Court declines to issue a Certificate of Appealability (COA) to Petitioner. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). "The district court must issue or deny a [COA] when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Miller-El v. Cockrell* , 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 481). When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85 (2000).

The Court declines to issue Petitioner a COA; reasonable jurists would not find it debatable whether this Court was correct in its rulings.

22

However, in the event that Petitioner seeks an Application for Leave to Proceed On Appeal *In Forma Pauperis*, the Court grants the Application. *See* Fed. R. App. P. 24(a)(1). An appeal may not be taken *in forma pauperis* if the court determines that it is not taken in good faith. 28 U.S.C. § 1915(a)(3). Although the Court declines to issue a COA, the Court cannot certify that an appeal would not be taken in good faith. The Court will, therefore, grant Petitioner such an Application.

## IV. CONCLUSION

For the reasons stated, the Court: (1) DENIES Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] with prejudice; (2) DECLINES to issue Petitioner a COA; and (3) GRANTS Petitioner an Application for Leave to Proceed On Appeal *In Forma Pauperis*.

IT IS ORDERED.

s/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated: May 16, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 16, 2012.

s/Linda Vertriest_____
Deputy Clerk

23